\

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROXANNE M. ROSALES, | ) | 1:10-cv-1449 LJO GSA |
| | ) | |
| | ) | |
| | ) | **FINDINGS AND RECOMMENDATIONS** |
| Plaintiff, | ) | **REGARDING PLAINTIFF'S** |
| | ) | **SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Roxanne Rosales ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge Gary S. Austin for findings and recommendations to the District Court.[1]

///

///

///

///

---

[1] Defendant consented to this Court's jurisdiction on September 22, 2010. (Doc. 12). However, on September 1, 2010, Plaintiff declined to consent. (Doc. 9. Accordingly, this case is submitted to the District Court Judge based on these Findings and Recommendations.

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for Social Security Disability Insurance Benefits on April 16, 2007, alleging disability beginning August 8, 2006. AR101-107. Plaintiff's applications were denied initially and on reconsideration. AR 47-60, 63-67, 69-75. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 75. ALJ Sharon L. Madsen held a hearing on March 5, 2009, and issued an order denying benefits on July 15, 2009. AR 8-19. The Appeals Council issued a decision affirming the ALJ's order. AR 1-3.

**Hearing Testimony**

ALJ held a hearing on April 28, 2009. Plaintiff personally appeared and was assisted by attorney Mr. Myland.[3] AR 20-46. Vocational Expert ("VE") Ms. Cheryl Chandler also testified.

Plaintiff was thirty-two years old at the time of the hearing. AR 24. She is married and lives in a condominium with her husband AR 25. Plaintiff receives food stamps. AR 25. Her husband was going to start a new job the day after the hearing. AR 25. Plaintiff attended college and has a bachelor's degree. AR 25-26 She also has a drivers license. AR 25.

Plaintiff does all of the household chores including cooking, cleaning the dishes, making the beds, and shopping. AR 26. She does not belong to any social groups but speaks with her family on the phone. AR 26. During a typical day, Plaintiff showers, eats breakfast, cleans the cat's litter box and gets the mail. AR 27. During the rest of the day she plays on the computer, sews, watches television, and does household cleaning as needed. These tasks usually include vacuuming, sweeping, mopping, and taking out the garbage. AR 27. Although Plaintiff is able to do household chores, she is not able to do them all at once. For example, she is only able to vacuum one level of the house in a day, she in unable to carry the grocery bags in from the car, and she must take frequent breaks in between tasks. AR 37.

At the age of sixteen Plaintiff began working in retail sales. AR 27. She worked in that field for approximately four years. AR 28. She also worked for a company called Pack Bill in

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Mr. Myland's first name does not appear in the transcript.

2007 but was let go in exchange for her vacation time.  She subsequently worked for the Internal Revenue Service doing seasonal data entry work from February through June 2008. AR 28. Most recently, she was employed by AT&T as a customer service representative.  This position entailed answering telephones, working on the computer, and sitting at the desk most of the time. AR 27.

Plaintiff believes that she is unable to work full-time even doing data entry because she has low back problems due to her weight and is she unable to sit for long periods.  AR 29.  She also suffers from depression, anxiety, and irritable bowel syndrome.  AR 29-30. The irritable bowel syndrome is stress related which is currently exacerbated because she does not have any income.  AR 30.  When the irritable bowel syndrome flares up she has to go to the bathroom ten to twelve times in an eight hour period. AR 30.  Plaintiff has been prescribed medication to treat the condition but it has not been effective at reducing the number of times she needs to use the bathroom. AR 30.  Each visit to the bathroom lasts from five to ten minutes. AR 30.  Plaintiff has never had an accident because she is always near a bathroom. AR 31.

In addition to the irritable bowel syndrome, Plaintiff suffers from constant lower back pain. AR 32.  The pain feels like tightness that shoots down her leg to her foot. AR 32.  She also suffers from pain in her feet from plantar fascitis  As a result, Plaintiff is only able to lift ten to fifteen pounds, stand for approximately fifteen minutes at a time, and sit for approximately thirty to forty five minutes. AR 32-33.  Plaintiff also suffers from edema in her knee which causes her pain two or three times a week.  She currently receives pain injections to address this condition.  AR 34.  To treat her back and leg pain, Plaintiff stretches, gets messages, takes showers, and uses a hearing pad and ices packs. AR 35.  She also elevates her legs approximately two to three hours a day.  AR 35.

In addition to these physical ailments, Plaintiff also suffers from psychological difficulties.  AR 35.  She attempted suicide by taking a full bottle of Xanax.  AR 36.  She does not remember much about the incident other than she attempted to walk up the stairs and fell after taking the pills.  The next thing she remembers is that she was at the emergency room with her mother.  AR 36.

Plaintiff has limited her contact with friends and family because "she doesn't like to bring them down." AR 38.  She will occasionally send short e-mails to family members but has difficulty concentrating.  The longest she can concentrate is approximately thirty minutes.  AR 39.  She also has difficulty with her voice when under stress.  AR 38.  Plaintiff indicated that she would like to return to school but is unsure how she will do so with the status of the economy.  She is currently waiting to be called back by the IRS for additional seasonal work.  AR 39.

Ms. Chandler also testified at the hearing.  AR 41-46.  The VE classified Plaintiff's work as a customer service representative in communications as skilled sedentary work.  Additionally, it was noted that this work was similar to a cashier/sales clerk which is classified as semiskilled and light.  AR 41.  Finally, the data entry work is classified as sedentary work.  AR 41.

The VE was asked to consider a hypothetical in which an individual could lift twenty pounds on occasion and ten pounds frequently, who could sit, stand, and walk for six hours, and who could occasionally stoop, crouch, crawl, kneel, and climb.  AR 36.  The person could not perform jobs where frequent or loud communication is required.  The VE indicated this person would be unable to perform Plaintiff's past work as a customer service representative and sales clerk. AR 42.  However, some data entry jobs would be available. AR 42.

The VE was asked to consider a second hypothetical in which the factors were the same as the first hypothetical but that this person would need a sit and stand option.  The VE indicated that this person would still be able to do Plaintiff's past work performing data entry , however, there would be some erosion in the job base.   AR 43.  There would be approximately 33,700 jobs available in data entry at the sedentary level.  AR 43.  There would also be approximately 2,600 jobs available in production work with a sit and stand option.  AR 43.  These jobs include material handler at 2,200 jobs and 1,000 hand packaging positions. AR 43.

The VE was asked to consider a third hypothetical in which an individual would be required to lift ten pounds on occasion and ten pounds frequently, who could sit, stand, and walk for two hours, who could occasionally stoop, crouch, crawl, kneel, and climb without a stand sit option.  The VE testified that production worker and material handler jobs would still be available.  AR 43.

When asked to consider a fourth hypothetical that included the same restrictions as hypothetical three, and also added an inability to concentrate for more than thirty minutes at a time, the VE indicated that no jobs would be available. AR 44.

Finally, Plaintiff's attorney asked whether any jobs would be available using the hypotheticals above if an individual would need access to the bathroom ten to twelve times a day with each trip lasting ten minutes, approximately fifty percent of the time. AR 44. The VE indicated that no jobs would be available under these circumstances. AR 44.

**Medical Record**

The entire medical record was reviewed by the Court (AR196-434), however, only those medical records relevant to the issues on appeal will be addressed below as needed in this opinion.

**ALJ Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 18. More particularly, the ALJ found that Plaintiff may have engaged in substantial gainful activity from her alleged disability onset date of August 8, 2006. AR 13. Further, the ALJ identified obesity, degenerative disc disease, muscle tension dysphonia, and right knee osteoarthritis as severe impairments. AR 13. Nonetheless, the ALJ determined the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 15.

Based on her review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, to sit, stand, and/or walk for six hours out of an eight hour day, and occasionally stoop crouch, crawl, kneel, and climb except that she cannot perform jobs where frequent or loud communication is required.[4] AR 15. After noting that Plaintiff is waiting for a call back from the IRS, the ALJ determined that Plaintiff was able to perform her past work as a data entry

---

[4] These limitations meet the classification for light work which is defined as lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567.

5

1 clerk. AR 18.  Moreover, using the Medical-Vocational Rules, 20 CFR Part 404 Subpart P,
2 Appendix 2 ("the grids"), the ALJ determined Plaintiff was not disabled as defined by the Social
3 Security Act. AR 18.

## SCOPE OF REVIEW

5       Congress has provided a limited scope of judicial review of the Commissioner's decision
6 to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
7 this Court must determine whether the decision of the Commissioner is supported by substantial
8 evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"
9 *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*
10 *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
11 reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at
12 401.  The record as a whole must be considered, weighing both the evidence that supports and
13 the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,
14 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must
15 apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
16 This Court must uphold the Commissioner's determination that the claimant is not disabled if the
17 Secretary applied the proper legal standards, and if the Commissioner's findings are supported by
18 substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th
19 Cir. 1987).

## REVIEW

21       In order to qualify for benefits, a claimant must establish that he is unable to engage in
22 substantial gainful activity due to a medically determinable physical or mental impairment which
23 has lasted or can be expected to last for a continuous period of not less than twelve months.  42
24 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of
25 such severity that she is not only unable to do her previous work, but cannot, considering her age,
26 education, and work experience, engage in any other kind of substantial gainful work which
27 exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).
28

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Here, Plaintiff argues that when applying this process the ALJ : 1) improperly rejected the medical opinion evidence, 2) did not properly evaluate Plaintiff's obesity, and 3) erroneously made an adverse credibility determination. In opposition, Defendant argues that the ALJ: 1) properly evaluated the physicians' opinions and the medical record, 2) considered Plaintiff's obesity, and 3) correctly rejected Plaintiff's testimony.

## **DISCUSSION**

### A.     *Physician Opinion Evidence*

Plaintiff argues that the ALJ did not give sufficient reasons to reject the medical opinions of Drs. Sandhu and Quinn, as well as the state agency physicians. (Doc. 14 at 4-7). Defendant contends that the ALJ's consideration of the medical opinion evidence was proper. (Doc. 15 at 2-5).

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In this case, the ALJ had six medical opinions to consider: (1) Dr. Sandhu, M.D., Plaintiff's treating psychiatrist, 2) Dr. Ikawa, M.D., a state agency non-examining psychiatrist, 3) Dr. Starace PhD, a state agency non-examining psychologist 4) Dr. Quinn, M.D., Plaintiff's treating physician, 5) Dr. Fast, M.D., a state agency non-examining physician, and 4) Dr. Ginsberg, M.D. a state agency non-examining physician.

***Psychological Impairments***

*Treating Psychiatrist's Opinion*

Plaintiff was first seen at Kaiser Permanente Mental Health Department ("Kaiser Mental Health Clinic") in September 2005 for a psychiatric assessment. AR 314-319. Individual and group therapy were recommended as well as medication. AR 319. Plaintiff was later examined by Dr. Sandhu on March 9, 2007, at Kaiser Mental Health Clinic for anxiety and panic attacks. AR 201-202, 216-218. She was prescribed Citalopram and Alprozolam. AR 203, 293-294. She was subsequently treated by both Dr. Sandhu and Gregory Yoder, a Marriage and Family Therapist, from March 2007 through August 2007.[5] AR 204-207, 210, 214, 219-220, 287- 292, 296-304. During this treatment, Plaintiff appeared to stable and her personal situation was improving. AR 290-291, 287-288.

On October 12, 2007, Plaintiff had an argument with her mother and took approximately 25 Xanax tablets and drank " a couple of Mike's hard Lemonade." AR 399-424. She was hospitalized and was released on October 15, 2007. When she was discharged from the hospital, Dr. Sandhu indicated that Plaintiff's prognosis was good. AR 399-400.

---

[5] Plaintiff participated in both individual and group therapy during this period.

8

On March 2, 2009, Dr. Sandhu completed a Psychiatric Medical Source Statement. AR 433. Dr. Sandhu noted that Plaintiff experienced stress at her job in the past and that she currently experiences anxiety when dealing with the public. Plaintiff suffers from voice loss, increased heart rate, and shortness of breath when dealing with the public directly. AR 433. Dr. Sandhu indicated that the duration of Plaintiff's symptoms is unknown and that she received inconsistent mental health treatment. AR 433. However, Plaintiff was complaint with her medications and her prognosis was good. AR 433. Dr. Sandhu opined Plaintiff is able to understand, remember, and carry out simple one-or-two job instructions and that Plaintiff could withstand work pressures if she could avoid public contact, including telephone contact. [6] AR 433.

*State Agency Mental Health Professionals' Opinions*

On May 17, 2007, Dr. Glen K. Ikawa, M.D. a state agency non-examining psychiatrist, reviewed Plaintiff's records. AR 272-285. Dr. Ikawa indicated that Plaintiff suffered from mild limitations in activities of daily living and maintaining social functioning, and also had moderate difficulties in maintaining concentration, persistence or pace. AR 283. Nonetheless, Dr. Ikawa opined that Plaintiff was able to sustain simple, repetitive tasks, and could relate and adapt. AR 274. On October 15, 2007, state agency psychologist Dr. R. Strarace, PhD reviewed Plaintiff's records and affirmed Dr. Ikawa's opinion. AR 311.

*ALJ's Analysis*

With regard to the mental health professional opinions, the ALJ performed an analysis pursuant to section 12.00C for the listing impairments of mental disorders and noted the following:

> As noted by the treating psychiatrist Dr. Sandhu, the claimants compliance with medication has been good, although she has been inconsistent in treatment at the mental health clinic. His opinion that the claimant should avoid direct contact with the public due to anxiety symptoms including loss of voice is consistent with the residual functional capacity expressed below. The State agency medical consultants opinion that the claimant has mild limitations in activities of daily

---

[6] Plaintiff argues that Dr. Sandhu accepted Plaintiff's statements that she could not manage her own funds and could not concentrate for more than two hour increments. (Doc. 14 at pg. 4). The Court disagrees with this interpretation which will be addressed in the opinion below.

>living and moderate limitations in concentration, persistence and pace is not supported by the medical evidence of record. As psychologist Dr. Starace noted, the claimant's mental status evaluations of her outpatient mental health progress notes are essentially within normal limits. AR 14.

The ALJ also noted that the medical record indicates Plaintiff loses her voice due to anxiety symptoms rather than structural problems. AR 17. The ALJ gave some weight to the state agency's consultants opinions that the functional dysphonia symptoms are intermittent and does not meet the listing. However, she gave substantial weight to the opinion that limits should be placed on Plaintiff's communication. AR 17.

Plaintiff argues that Dr. Sandhu accepted Plaintiff's representation that she could only perform work in two hour increments and that the ALJ did not give specific or legitimate reasons for rejecting this limitation. The Court is not persuaded by Plaintiff's interpretation of Dr. Sandhu's report. Although Dr. Sandhu reiterated Plaintiff's concern in his assessment, there is no indication in his report that he adopted that restriction. Therefore, the ALJ did not err in specifically failing to address this limitation.

Plaintiff further argues that the ALJ failed to give any reasons for not accepting the state agency consultants' opinions that Plaintiff suffers from moderate limitations in concentration, persistence, and pace. However, this argument is also without merit as the ALJ specifically noted that she did not agree with that limitation based on Dr. Starace's assessment that Plaintiff's mental health status evaluation and her mental health progress notes were within normal limits. AR 17, 197, 202, 204, 206, 287-288, 290-291, 293-294, 303, 305. Moreover, in determining that Plaintiff had mild limitations in this area, the ALJ noted that Plaintiff is able to watch television and movies, she uses a computer, and finishes what she starts. AR 14. After considering all of these factors, the ALJ adopted the opinion of Dr. Sandhu, Plaintiff's treating psychiatrist, that Plaintiff is able to understand, remember, and carry out simple one-or-two job instructions and that Plaintiff could withstand work pressures if she could avoid public contact including telephone contact. These findings are supported by the medical record and are incorporated into the ALJ's RFC.

///

*Physical Impairments*

*Treating Physician Opinion*

Plaintiff injured her left arm and right knee in two falls in late 2007, and was treated by Dr. Karl Quinn, M.D. at Kaiser Permanente. AR 363, 366. She was prescribed Ibuporfen, rest, ice, and Vicodin. AR 362-363. By March of 2008, Plaintiff reported her pain was getting better and a MRI revealed normal findings, however, her pain was exacerbated when she stood longer than fifteen minutes or walked for more than one half hour. AR 358-359.

Plaintiff was seen in urgent care on May 23, 2008. AR 355. She reported a flare-up of pain one week later and walked with an antalgic gait. AR 353-354. Plaintiff received acupuncture treatment, Vicodin, and physical therapy over several months to treat the pain. AR 336-350. Physical therapy was of limited help but acupuncture was effective. Although Plaintiff showed some improvement, she would experience exacerbations after activities like vacuuming. AR 341, 343, 347, 349.

On July 28, 2008, Plaintiff was referred to Dr. Akbar for lumbar back pain. AR 341. At that time, Plaintiff reported she had back pain for many years with most episodes lasting one to three weeks. However, in the past year she had three episodes. AR 341. An MRI completed on July 26, 2008 revealed degenerative changes at L5-S1. There was a large right eccentric and paracentral protrusion with encroachment worse on the right and an annular tear. AR 335. A lumbar x-ray was normal except that there was narrowing at L5-S1 with spur formation and mild scoliosis. AR 335. Plaintiff was diagnosed with lumbar radiculopathy, discogenic low back pain, and myofascial pain. AR 335. Plaintiff's subjective pain ratings from May to August 2008 ranged from a three out of ten to nine out of ten. AR 334, 336, 341, 344, 347, 349, 366. Plaintiff received an epidural injection in the spine at L5-S1 on August 27, 2008. AR 330. She also received a Supartz injection to her knee on September 4, 2008. AR 326. Plaintiff was also examined and treated for jaw pain in November and December of 2008. AR 321-323.

On February 4, 2009, Plaintiff was seen by Dr. Quinn, her treating physician, and reported one week of back pain. Dr. Quinn noted that Plaintiff's appearance was alert, well appearing, that she was overweight but in no distress. AR 320. During a back exam, it was

11

noted that Plaintiff had back pain with motion, tenderness in the lower back with more pain on the right side in the L5 region, however she had normal reflexes and strength in her lower extremities. AR 320.

On February 28, 2009, Dr. Quinn completed a questionnaire indicating that Plaintiff could perform sedentary work. AR 433. He based this opinion on Plaintiff's diagnosis of low back pain, radiculopathy, obesity, myofascial pain, and deconditioning. AR 425. He also noted that Plaintiff had decreased range of motion, a positive straight leg raise, and tender points. AR 425. Dr. Quinn opined that Plaintiff met the discogenic listing 1.04 at times, but not consistently. AR 425. On March 24, 2009, Dr. Quinn completed a second questionnaire noting again that Plaintiff could perform some sedentary work and that she had reported that she has ten to twelve bowel movements a day. He also noted that her "GI work-up was O.K." AR 434.

*State Agency Physicians' Opinion*s

On May 17, 2007, Dr. Fast, a state agency non-examining physician reviewed Plaintiff's records and opined that Plaintiff could lift and carry up to fifty pounds occasionally and up to twenty-five pounds frequently; she could stand and walk up to six hours; and sit for up to six hours in an eight hour day. AR 264-271. He also indicated that Plaintiff must avoid jobs requiring frequent or urgent voice communication. AR 265-267. In October 2007, Dr. Brian Ginsberg reviewed Plaintiff's records and affirmed Dr. Fast's earlier findings. AR 307-310.

*ALJ's Analysis*

With regard to the physician evidence the ALJ stated as follows :

> As for the opinion evidence, treating internist Dr. Quinn opined that claimant was not precluded from performing any full-time work at any exertional level, and even when she has a flare-up she would still be able to do some sedentary work. Less weight is given to this opinion that the combination of the claimant's impairments of low back pain, obesity, myofascial pain and radiculopathy preclude her form performing no more than sedentary work, because he did not support his conclusion. His note that she had decreased range of motion, positive leg raise, and tender points is not sufficient because his clinical notes of February 24, 2009 indicate that when she was seen by him complaining of a weak of back pain, her general appearance was alert; she was well appearing, and she was in no distress and [sic] overweight. Examination revealed pain with motion, tenderness in the lower back extremities. Dr. Quinn did not report straight leg raises or sensory exam to confirm radiculopathy. He also declined to comment on the length of time she can sit, stand, and/or walk because he did not examine her for

12

1   this.  He noted that although she may need to lie down when she is having a flare-
    up, this would not be done on a regular basis.
2   AR 17 (Citations omitted).

With regard to the state agency doctors the ALJ gave little weight to their opinions that Plaintiff could perform medium work.  She opined that these doctors did not take Plaintiff's right knee impairment, the lumbar disc herniation, and more recent low back treatment into consideration.  AR 17-18.

Plaintiff argues that the ALJ did not give specific and legitimate reasons for rejecting Dr. Quinn's opinion that Plaintiff sometimes met the 1.04 listing and was limited to some form of sedentary work with an occasional need to lie down.  (Doc. 14 at pg. 6).  However, in rejecting the opinion, the ALJ specifically noted that Dr. Quinn's findings were not supported by the medical record.  For example, Dr. Quinn indicated that he based his conclusions on decreased range of motion, positive straight leg raises, and tender points.  AR 425.  However, the ALJ noted that when Dr. Quinn had seen Plaintiff on February 24, 2009, she was alert and in no apparent distress.[7]  Moreover, during the February 24th evaluation, Dr. Quinn did not perform straight leg raises or sensory exam to confirm radiculopathy as he indicated.  AR 17, 320.  Furthermore, the ALJ did not give the opinion weight because Dr. Quinn did not address the length of time Plaintiff could sit or stand.  These are all valid basis for rejecting a treating physician's opinion.  *See*, *Batson v. Comm'r of Soc. Sec.,* 359 F. 3d 1195 fn. 3 (9th Cir. 2004) (rejecting a treating physician's opinion that was inconsistent with the treatment notes); *Tonapetyan v. Halter,* 242 F. 3d 1144, 1149 (9th Cir. 2001) (rejecting treating physician's opinion was it was not supported by the medical record); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (A brief and conclusory form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion).

---

[7] Indeed, the record indicates that although Plaintiff was treated for chronic back pain, she consistently walked with a normal gait, had normal strength and reflexes, and maintained a normal range of motion.  AR 320, 341-342, 344, 347-350, 353, 368.

Moreover, Plaintiff contends that the ALJ ignored other relevant test results including an MRI and x-ray performed in July 2008. However, it is clear that the ALJ considered these findings as they are fully summarized in the decision (AR 16), and the ALJ discounted the non-examining state agency opinions that Plaintiff could perform medium work because the opinions did not take the limitations contained in the MRI and x-rays into consideration. AR 17-18. Plaintiff's argument that the ALJ ignored Dr. Quinn's diagnosis that Plaintiff had tenderness in her back in December 2008 is also unavailing. Although some tenderness in her back was noted, Plaintiff was not seen by Dr. Quinn in December 2008 for back pain. The primary complaint during that visit was neck and jaw pain. AR 323.

Finally, although the ALJ indicated that Plaintiff could perform light work, the ALJ also made a specific finding that Plaintiff was able to perform her previous data entry job which is classified as sedentary work. AR 18. This is consistent with Dr. Quinn's opinion that Plaintiff could perform some sedentary work. Thus, even if the ALJ's had accorded Dr. Quinn's assessment full weight, the vocational expert's testimony established that Plaintiff could perform her past relevant work and therefore the ALJ's finding of non-disability is supported by substantial evidence. [8] AR 43. Although Plaintiff argues that it is unclear whether Plaintiff could perform substantial gainful activity because she would need to lay down occasionally, Dr. Quinn's report does not support that argument. He specifically noted that Plaintiff may need to lie down but this would be required on a regular basis. AR 425. Moreover, although Dr. Quinn indicated that Plaintiff reported to him that she needed to use the bathroom ten to fifteen minutes a day, the ALJ found these subjective statements not credible as discussed below. This finding is consistent with Dr. Quinn's assessment that Plaintiff's GI tests were normal. AR 434. Contrary to Plaintiff's assertions, Dr. Quinn's report was not ambiguous regarding whether Plaintiff could perform substantial gainful activity at the sedentary level.

///

---

[8] The ALJ's application of the Grids was proper. Plaintiff is a younger individual who has at least a high school education, can perform sedentary and/or light work, and she is able to communicate in English. Therefore, she is not disabled under the Act. Medical-Vocational Rule 201.00 and 202.00, Appendix 2, Subpart P, Regulation 4.

**B.     Obesity**

Plaintiff argues that the ALJ did not properly evaluate her obesity because she failed to consider the effects obesity would have on her low back, disc problems, and depression. Specifically, Plaintiff contends that the ALJ failed to conduct an analysis pursuant to SSR-02-1p. Defendant counters arguing that the ALJ's treatment of this issue was proper.

Plaintiff correctly notes that pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation process, including when determining an individual's RFC.[9] "The combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p. The Ninth Circuit recently held that pursuant to SSR 02-1p, the ALJ must consider obesity in determining a RFC based on the information in the case record. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Celaya v. Halter*, 332 F 3d 1177 (9th Cir. 2003). In *Celaya*, the Ninth Circuit reasoned that the ALJ should have considered the claimant's obesity as a disabling factor, even when it was not expressly argued by the claimant, because obesity was raised impliedly in Celaya's report of symptoms. Moreover, the Court held it was clear that Celaya's obesity was close to the listing criterion and was a condition that could exacerbate her reported illness. Because Celaya was proceeding pro se, the ALJ had a duty to develop the record regarding her obesity. *Celaya v. Halter*, 332 F.3d at 1182.

However, in *Burch v. Barnhart*, the Ninth Circuit held there was no reversible error when an ALJ found that the claimant's obesity, in combination with her other impairments, did not meet a listing. *Burch v. Barnhardt*, 400 F.3d at 682-683. In doing so, the Court noted that an "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Id.*

---

[9] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy." *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir.1991). Although they do not have the force of law, the rulings represent the Secretary's interpretation of its regulations and they should be given deference unless they are inconsistent with the statute or regulations. *Id*.

1  Here, although Plaintiff argues the ALJ erred, she does not specify how her obesity limits
2  her functional capacity, how it exacerbates her current existing condition, or that she can
3  establish equivalency to a listing impairment.. Plaintiff's entire argument on this issue consists of
4  two paragraphs. (Doc. 14 at pgs. 8-9). Therefore, this argument does not provide a separate
5  basis to challenge the ALJ's decision.

6  Notwithstanding the above, it is clear that the ALJ did in fact consider Plaintiff's weight
7  in the analysis. For example, the ALJ identified Plaintiff's obesity as a severe impairment at step
8  two. AR 13. Moreover, the ALJ specifically discusses SSR 02-1p at step three and noted that
9  the RFC reflects the degree of limitation considering Plaintiff's obesity. AR 15. Thus, it is clear
10 that the ALJ factored Plaintiff's obesity into her overall assessment that Plaintiff is capable of
11 light work with communication limitations, and that she could perform her past work performing
12 data entry which is sedentary work.   In sum, the ALJ's consideration of Plaintiff's obesity was
13 proper. *See Burch v. Barnhart*, 400 F.3d at 682-83.

**C.  Credibility**

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting her testimony. Defendant argues that the ALJ's credibility finding is supported by substantial evidence.

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence");

SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). These factors include examining the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ identified lumbar degenerative disc disease, muscle tension dysphonia, and right knee osteoarthritis as severe impairments. AR 13. She further found that:

> [a]fter considering the evidence of record, the undersigned finds that the claimaint's medically-determinable impairments can reasonably be expected to produce the alleged symptoms, however the claimant's statements about the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with my assessment of his residual functional capacity assessment.

AR 16. This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen v. Chater*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because it is unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and

what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

Here, the ALJ made several specific credibility findings. The ALJ noted that the medical evidence did not support the extent of Plaintiff's alleged symptoms. For example, the ALJ noted that Dr. Quinn opined that Plaintiff was not precluded from performing any full-time work at any exertional level, and even when she has a flare-up she would still be able to do full-time work. AR 17, 425, 433. Moreover, with regard to her diagnosis of irritable bowel syndrome, the ALJ noted that there was no medical evidence that this condition was a disabling problem. AR 18. Although Plaintiff reported ten bowel movements in a day, her gastro-intestinal work-up was normal and she was able to work at the IRS for five months in 2008. AR 18, 27-28, 39, 433. Finally, the ALJ noted that while Plaintiff's prognosis is good, she has received inconsistent mental health treatment for her psychological impairments. AR 14-15, 433.

In short, the ALJ provided a number of clear and convincing reasons that are supported by the record when concluding Plaintiff's subjective symptom testimony was less than credible. Here, ALJ Madsen clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Lester v. Chater,* 81 F.3d at 834. Furthermore, the reasons provided are acceptable. *See, e.g., Morgan v. Commissioner v. Social Security Administration,* 169 F. 3d 595, 600 (9th Cir. 1999) (conflict between claimant's subjective complaints and the objective medical evidence in the record is a specific and substantial reason that undermines a claimant's credibility); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (inconsistencies between the record and medical evidence supports a rejection of a claimant's credibility); *Bunnell v Sullivan*, 947 F.2d at 346-47 (treatment and lack of treatment are factors used to evaluate credibility); *Fair v. Bowen*, 885 F.2d 597, 603-604 (9th Cir. 1989) (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony). [10]

---

[10] *See also* 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility).

Given the above, the Court will not disturb the ALJ's credibility determination. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as here, the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

## **RECOMMENDATION**

Based on the foregoing, the ALJ's decision is supported by substantial evidence and is free of legal error. It is recommended that judgment be entered against Plaintiff, Roxanne Rosales and in favor of Defendant, Commissioner of Social Security.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l). Within **fifteen (15)** days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **December 1, 2011**              /s/ **Gary S. Austin**
                                             UNITED STATES MAGISTRATE JUDGE